George T. METZ and Marianne C. Mnich

v.

QUAKER HIGHLANDS, INC.

v.

James KOVACS t/d/b/a Prestigious Homes by James, Inc.

Appeal of QUAKER HIGHLANDS, INC.

Superior Court of Pennsylvania.

Argued March 24, 1998.

Filed July 8, 1998.

---

Harry W. Kennedy, Pittsburgh, for appellant.

Christopher R. Opalinski, Pittsburgh, for Metz & Mnich, appellees.

Todd P. Prugar, Pittsburgh, for James Kovacs, appellee.

Before POPOVICH, ORIE MELVIN and BROSKY, JJ.

POPOVICH, Judge:

The defendant/appellant, Quaker Highlands, Inc., appeals the order (reduced to judgment) awarding treble damages in the amount of $122,714.97 to the plaintiffs/appellees, George T. Metz and Marianne C. Mnich, pursuant to Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL).[1] We affirm.

The record discloses that the plaintiffs entered into a contract with the defendant to purchase land to build a home. The purchase was predicated upon the defendant's representation that the lot consisted of back-fill between two to eight feet in depth. However, when the plaintiffs' contractor/additional defendant, James Kovac, t/d/b/a Prestigious Homes by James, Inc.,[2] began excavation and found that the fill exceeded that indicated by the defendant, and the defendant refused to offset the additional cost to remedy the matter, the plaintiffs filed suit seeking rescission (Count I) and damages for fraudulent misrepresentation via UTPCPL (Count II).

With the defendant's failure to appear at a pre-trial conciliation, the court ordered that judgment be entered in favor of the plaintiffs (on Count I) for $48,504. In regard to Count II—treble damages, a rule was issued and made returnable on January 6, 1997. Argument was heard and supplemental memoran-

1. 73 P.S. § 201–1 et seq.

2. The additional defendant was dismissed from the suit by order dated December 11, 1996. Neither litigant has filed an appeal challenging the dismissal.

da of law on the issue of damages were ordered. Also, the parties were directed to submit damage exhibits and depositions. Thereafter, the court denied the defendant's "election of remedies" contention that the grant of rescission precluded an entry of treble damages. In fact, the court trebled the purchase price of the lot to reach $122,-714.97 in damages and $40,005.15 in counsel fees to the plaintiffs under the UTPCPL.

The defendant filed an appeal restricted to a challenge of treble damages on grounds that once a rescission of the sales contract occurred, the plaintiffs were not entitled to damages as well. On this point, the court below wrote:

> Although Defendant's position that rescission is an alternative remedy to damages is correct as a general rule, it must be remembered that the damages contemplated in that context are *contract* damages. Treble damages under the UTPCPL are based on *fraud*. Fraud damages are not an alternative remedy to either contract damages or rescission of a contract. Fraud damages include a punitive element absent from those other remedies, as do the UTPCPL treble damages.
>
> \*   \*   \*
>
> The amount of *restitution* that would complete Plaintiffs' return to their previous position is therefore the correct amount to use under the UTPCPL where the breach, as here, results from fraud rather than mere non-performance. (It should be noted that the Court agrees with plaintiffs and Defendant that the purchase price of the lot in question is not the figure to treble where the purchase contract has been rescinded.) The clear interest of the UTPCPL is to treble the actual money loss suffered as a result of a consumer-type fraud. The use of the word "damages" instead of "damages or restitution" cannot be meaningful, given the overall intent and purpose of the legislation.
>
> In the instant case, upon entering the contract with Defendant, Plaintiffs had expected to be able to build a home of a certain size at a certain cost on a lot that was not located on fill. Defendant fraudulently concealed the fact that the lot it sold Plaintiff was located over fill rather than being on its natural state. The amount to be trebled would therefore consist of the down payment and transactional costs of the sale plus the increase in the price of a comparable lot, the increase in the cost of construction of a comparable home, and the increase in the interest rates Plaintiffs will now have to pay to be able to begin building a comparable house on a comparable lot at this point in time. This amount, as calculated by Plaintiffs' expert, William Wesley Palmer, CPA, and essentially unchallenged by Defendant, is $40,904.99. . . . Therefore, treble damages are $122,714.97.

Court Opinion, 5/12/97 at 2 (Emphasis in original). We agree.

This Court held in *Boyle v. Odell*, 413 Pa.Super. 562, 605 A.2d 1260 (1992), that the trial court erred in not permitting the buyers to obtain "restitution", in addition to a "rescission" of their sales agreement, where the seller engaged in fraud. More specifically, we held:

> Assuming the trial court finds fraud by the defendant, or a breach of contract as alleged by the plaintiffs in the first count of their complaint, it clearly appears that the plaintiffs would have a right to obtain a rescission of the transaction, as well as a recovery of monies from the defendant.
>
> \*   \*   \*
>
> . . . [I]n addition to granting equitable relief, in the nature of rescission, the trial court is also empowered to grant the plaintiffs restitution of appropriate losses. Restitution, unlike damages, is a remedy not inconsistent with rescission. \* \* \* In light of our remand of this case to the trial court for further proceedings it would not be appropriate for our court to examine the details of the plaintiffs' claims for monies, to determine whether they encompass restitution claims or damages. Suffice it to point out that if the plaintiffs are found to be entitled to an order of rescission, they would also enjoy a right to restitution.

605 A.2d at 1265 (Citations omitted).

■ We have no dispute with the lower court's list of items making up the figure for

"restitution" (totaling $40,904.99). It is one which was not objected to by the defendant and remained unchallenged by any affidavits and/or expert reports to the contrary requested by the court but never submitted by the defendant. Therefore, we consider the figure "restitution" permitted for claims based upon proven fraudulent transactions. *Id.*

Albeit this case appears to be the first to address the issue posed, we find that the clear language of the UTPCPL allows an award of treble damages. This interpretation is consistent with statutory construction requiring laws unambiguous on their face be given full effect. 1 Pa.C.S.A. § 1921. We may not ignore entitlement to damages where statutorily provided. To hold to the contrary would eviscerate the unequivocal language of the UTPCPL permitting an award of treble damages, which makes no exclusion where rescission of a contract is granted as well. We are not persuaded to hold otherwise now.

◼ Generally, an award of damages is preceded by proof of the amount and cause of one's loss. Hall, Handbook on the Law of Damages, § 31 at 99; Sedgwick, A Treatise on the Measure of Damages, Vol. I, § 170 at 317–318; Sutherland, A Treatise on the Law of Damages, Vol. I, § 75 at 59–60. The proof element having been satisfied, remuneration is the next prong to be met in order to entitle one to restitution to vindicate a right, e.g., to a benefit-of-the-bargain gone awry.

Here, the conduct of the Quaker Highlands, Inc. equates to an intentional misleading of buyers/plaintiffs into the purchase of realty known to fall short of their needs and requirements for the construction of a home, a fact which did not manifest itself until after the sales agreement had been executed and a contractor began excavating the property in preparation for construction of the plaintiffs' home. *Compare Roberts v. Estate of Barbagallo,* 366 Pa.Super. 559, 531 A.2d 1125, 1131 (1987).

◼ Yet, aware of the needs of the buyers, the seller failed to disclose and concealed the short-fall of the property, refused to rectify the matter when the problem was discovered

and caused suit to be instituted to resolve the case. In light of such outrageous conduct, to allow the rescission merely of the sales agreement without imposing a corresponding penalty for fraudulent behavior in consumer-type cases would do violence to the intent and purpose of the law (UTPCPL) enacted specifically by the Legislature to curb and discourage such future behavior. *Johnson v. Hyundai Motor America,* 698 A.2d 631, 637–640 (Pa.Super.1997).

Affirmed.